**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

In Re:

THE CELOTEX CORPORATION,

    Debtor.
_____/

CITY OF LOUISVILLE, KENTUCKY,

    Appellant.

vs.                                            CASE NO. 8:04-CV-1902-T-17-TGW

W.D. HINTON, AS PROPERTY DAMAGE
CLAIMS ADMINISTRATOR, and
CELOTEX ASBESTOS SETTLEMENT TRUST,

    Appellees.
_____/

**ORDER ON APPEAL**

    This cause comes before the Court on appeal from the Order of the Bankruptcy Court on Motion to Enforce Allowance of Claim and for Attorney's Fees and its Motion for Reconsideration of the Motion to Enforce Allowance of Claim and for Attorney's Fees.  Chief Bankruptcy Judge Paul Glenn entered the respective orders on July 25, 2003 and April 1, 2004.  Appellant, City of Louisville, Kentucky, appeals the Bankruptcy Court's determination that the Asbestos Property Damage Claim of the City had been properly submitted to arbitration and that the City was precluded from challenging the arbitrator's decision.

**STANDARD OF REVIEW**

    Appellant is entitled to an independent *de novo* review of all conclusions of law and the legal significance accorded to the facts. In re T & B Gen. Contracting, Inc., 833

F.2d 1455, 1460 (11th Cir. 1987), see also In re Chase & Sanborn Corp., 904 F.2d at 593 (11th Cir. 1990). Due regard is given to the opportunity of the trial court to "judge the credibility of the witnesses." Rule 8013, Rules of Bankruptcy Court. In reviewing the denial of the motion to vacate the arbitration award, we accept the bankruptcy court's findings of fact unless clearly erroneous, and we review questions of law *de novo*. Scott v. Prudential Securities, Inc., 141 F.3d 1007, 1014 (11th Cir. 1998).

## BACKGROUND

On October 12, 1990, The Celotex Corporation and Carey Canada, Inc. filed petitions under Chapter 11 of the Bankruptcy Code due to significant asbestos liabilities confronting both companies. The proceedings ultimately culminated in the confirmation of a Modified Joint Plan of Reorganization ("Plan"). The Plan established the Celotex Asbestos Settlement Trust ("Trust") under 11 U.S.C. § 524(g), a provision specifically designed for use in asbestos mass tort bankruptcies. The Plan allowed for both personal injury claims as well as property damage claims. Under the terms of the Plan and the related Trust Agreement, an independent third party known as the Property Damage Claims Administrator ("PDCA") would determine the individual asbestos property damage claims asserted against the Trust. Claims would be processed in accordance with the Asbestos Property Damage Claims Resolution Procedures ("Procedures").

On November 19, 1998, the City of Louisville, Kentucky ("City") timely submitted a property damage claim regarding Celotex roofing products. The PDCA initially allowed the City's claim for the amount of $10,033,132.24 and sent a Notice of Final Determination ("Notice") on April 28, 1999. On June 21, 1999, the City's attorney signed the Notice, evidencing the City's acceptance of the allowed claim, and returned the signed Notice to the PDCA.

After the allowance of the City's Claim but before payment by the Trust, the PDCA claimed to have a growing concern that roofing claims such as the City's did not engender a legally viable cause of action. At the time of the initial allowance, the PDCA asserts that he was unaware of pronouncements by the bankruptcy court that created substantial legal doubt as to the viability of certain roofing claims. Consequently, on October 11, 1999, the PDCA revoked the allowance of all roofing claims, including the City's, but the PDCA also gave these claimants an additional sixty days to submit

"Reasonable Evidence" of a viable roofing claim.

The City subsequently sent letters to the PDCA arguing that the initial allowance had become "final and binding" upon the City's acceptance. The City did not provide any additional evidence regarding the viability of its roofing claim.

On April 14, 2000, the PDCA notified the City of the disallowance of its claim. Pursuant to the Procedures, the City requested reconsideration. The disallowed claim was reviewed and affirmed. On October 20, 2000, the City requested that the disallowance be submitted for binding arbitration, but stipulated that "[b]y requesting and participating in the arbitration, the City of Louisville reserves and does not waive its right to pursue all other legal remedies available to challenge the improper denial of its claim." The City further requested that the arbitration be bifurcated on the issues of (1) whether the PDCA had the authority to revoke an allowed claim; and (2) whether the claim supported a legally viable cause of action; and that the PDCA and the Trust agreed to be bound by the outcome of the arbitration.

On September 25, 2001, the Arbitrator entered an order holding that the PDCA did not violate the Procedures and he had the authority to act as he did. On February 15, 2002, the City filed its Motion to Enforce Allowance of Claim for Attorney's Fees with the bankruptcy court. The bankruptcy court denied the motion in its July 25, 2003 order. The City sought reconsideration, but the bankruptcy court denied the Motion for Reconsideration in its order dated April 1, 2004.

## DISCUSSION

**Review of Arbitration Awards Generally**

The Eleventh Circuit has outlined a general procedure for the review of arbitration awards and limited vacatur to the four statutory bases of the Federal Arbitration Act ("FAA") and three additional non-statutory bases. Robbins v. Day, 954 F.2d 679, 683-84 (11th Cir. 1992); See also Brown v. Rauscher Pierce Refsnes, Inc., 994 F.2d 775 (11th Cir. 1993) (applying and explaining the Robbins procedure); Montes v. Shearson Lehman Bros., 128 F.3d 1456 (11th Cir. 1997) (adopting the third non-statutory grounds for vacatur). Although arbitrators are not required to explain their reasons for an award, O.R. Sec., Inc. v. Prof'l Planning Assocs., 857 F.2d 742, 747 (11th Cir. 1988) citing Wilko v. Swan, 346 U.S. 427, 436 (1953), the court must first look to the award

itself and determine whether a rationale was given. Brown, 994 F.2d at 779. If the arbitrator has provided an explanation for the award, then the challenging party may raise any of the statutory and non-statutory bases in its efforts to seek vacatur. Brown, 994 F.2d at 779. However, if no rationale is given, then the court must determine "whether a rational ground for the arbitrators' decision can be inferred from the facts of the case." Robbins, 954 F.2d at 684. The award is presumed to be proper, and "[t]he onus is on the part requesting the vacatur to refute this [presumption] and in turn every rational basis upon which the arbitrator could have relied." Robbins, 954 F.2d at 684. If the presumption is not refuted and there is a proper basis for the award, then review is limited to the four statutory bases of the FAA. Brown, 994 F.2d at 779 citing Robbins, 954 F.2d at 684. Conversely, if the challenging party has shown that there could be no proper basis for the award, the court may then consider the non-statutory bases for vacatur. Robbins, 954 F.2d at 684.

The Arbitrator gave no rationale for the conclusions reached, and pursuant to Eleventh Circuit procedure, this Court must determine whether a rational basis for the award can be inferred.

**Rational Basis for the Award**

It is well established that trusts are to be construed in a manner that gives effect to its general purpose in accordance with the settlor's intent. Albright v. U.S., 308 F.2d 739, 743 (5th Cir. 1962). Yet the City repeatedly points to a single sentence in the Procedures as the basis of its argument. "If the Claimant accepts the determination of the Property Damage Facility as to the amount of such Claimant's Allowed Claim, that decision will be final and binding on both parties and may not be reopened." Procedures, § IV.E.2. However, it is incorrect to read an individual clause of a trust instrument in isolation. Albright, 308 F.2d at 743. The settlor's intent and trust's purpose are instead ascertained by considering the trust instrument as a whole. Id. The purpose of The Celotex Asbestos Settlement Trust is clear. Amongst other things, the Trust is to "preserve, hold, manage, and maximize the Trust Assets for use in paying and satisfying Allowed Asbestos Claims." Modified Joint Plan of Reorganization, § 5.1 It is to use its to assets pay holders of claims in an equal manner. Second Amended and Restated Asbestos Settlement Trust Agreement, § 2.2. The goal of the Procedures is "to provide fair

payment to all Entities with valid Claims, . . ." Procedures, § III. "These [Procedures] may be interpreted by the PDCA only where an ambiguity exists. The interpretation shall be consistent with the purpose set forth herein, including providing payment in a cost-effective, reasonable method." Id. There is no express provision anywhere in the relevant documents that refers to revocation of a claim allowance. The Arbitrator's finding that the PDCA had the authority to revoke an allowed claim seems to be a rational conclusion when considering the need for revocation, the purpose of the Trust, the goal of the Procedures, and the Plan in its entirety. Therefore, this Court concludes a rational basis for the Arbitrator's award can be inferred.

As previously stated, the City primarily relies on a single clause of the Procedures in arguing that the initial allowance is final and binding. The City has not refuted every rational basis for the award, and therefore, the presumption towards validity of the award is maintained. Following Eleventh Circuit procedure, this Court will now review the statutory bases for vacatur.

**FAA: Statutory Bases for Vacatur**

The FAA governs review of commercial arbitration awards. Federal Arbitration Act, 9 U.S.C. §§ 1-16. While the FAA presumes that arbitration awards will be confirmed, 9 U.S.C. § 9, the statute does enumerate four narrow bases for vacatur: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party may have been prejudiced; and (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, an definite award upon the subject matter submitted was not made. 9 U.S.C. § 10. The Bankruptcy Court took no position as to the applicability of the FAA to this case. Although this Court will not discuss the issue of applicability either, this Court will nevertheless consider the statutory bases of the FAA as a grounds for vacatur.

Only the last of the above bases applies to the present case, "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). In its appellate brief, the City states that "[v]acation is proper where an arbitrator exceeds his power by disregarding an explicit

term of the contract." Appellant's Brief at 14 citing <u>Szuts v Dean Witter Reynolds, Inc.</u>, 931 F.2d 830, 831 (11th Cir. 1991). The City, however, draws an incorrect conclusion. In <u>Szuts</u>, the explicit term that was disregarded was the very term granting authority to the Arbitrator. 931 F.2d 830. It logically follows that because the Arbitrator disregarded this term, he exceeded his power. It is improper to conclude that an arbitrator exceeds his power in every instance that an explicit term of the contract has been disregarded. The explicit term the City claims to be disregarded by the Arbitrator is the "final and binding" term found in the Procedures. <u>See</u> Procedures, § IV.E.2. This term does not relate to the Arbitrator's authority to resolve the dispute, and therefore the Arbitrator did not exceed his power. Furthermore, the City's request for bifurcation evidences an awareness and acceptance that the Arbitrator would resolve the revocation issue. To now argue that the Arbitrator exceeded his power is unconvincing and without merit.

**Non-Statutory Bases for Vacatur**

Although Eleventh Circuit procedure limits review of this arbitration award to the four statutory bases above, this Court finds that consideration of the non-statutory bases would not alter the outcome of this case.

The Eleventh Circuit allows for vacatur of an arbitration award that is: (1) arbitrary and capricious; (2) against public policy; or (3) entered in manifest disregard of the law. <u>Montes</u>, 128 F.3d 1456.

The "arbitrary and capricious" basis can be further subdivided into two categories: an award that has no basis in *law* and an award that has no basis in the *contract*. <u>Brown</u>, 994 F.2d at 781. First, an award without basis in law is one that "exhibits a wholesale departure from the law." <u>Id</u>. It must contain more than just an error of law or interpretation. <u>Id</u>. The reasoning must be "so palpably faulty that no judge or group of judges could ever conceivably have made such a ruling." <u>Id</u>. quoting <u>Safeway Stores v. Am. Bakery & Confectionary Workers Int'l Union, Local 111</u>, 390 F.2d 79, 82 (5th Cir. 1968). This is not applicable here. There is a valid legal basis for the Arbitrator's decision. Also, if the reasoning behind the award was "so palpably faulty" then the numerous other arbitrators considering the issue of revocation would not have reached the same conclusion. (Docket No. 27, Appendix 4) (Out of 551 revoked roofing claims, 87 were submitted for arbitration. In all 87 instances, the arbitrators approved of

the PDCA's authority to revoke.)

Second, an award may be vacated as arbitrary and capricious if it is not grounded in the contract which provides for the arbitration. <u>Brown</u>, 994 F.2d at 781. This is not applicable either. As discussed above, the award does have a valid basis in the contract which provided for the arbitration. The Plan, Trust, Procedures, and relevant documents all have one underlying purpose—to ensure the Trust is distributed fairly and equally among valid claims. Furthermore, there is no clause specifically addressing revocation of an allowed claim. Therefore, the award is not arbitrary and capricious because it has a basis in both law and the contract.

The "public policy" basis is inapplicable to this case. The "manifest disregard of law" basis is also inapplicable but deserves explanation. The Eleventh Circuit has cautiously adopted this ground but not without emphasizing "this ground is a narrow one." <u>Montes</u>, 128 F.3d at 1461-62. The hesitation is based on a fear of suggesting that an arbitrator's decision can be reviewed for legal error. <u>Id</u>. To manifestly disregard the law, "there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." <u>Id</u>. citing <u>O.R. Sec.</u>, 857 F.2d at 747. However, "when the arbitrators do not give their reasons, it is nearly impossible for the court to determine whether they acted in disregard of the law." <u>O.R. Sec.</u>, 857 F.2d at 747. Because the Arbitrator gave no reasoning in support of his findings, this Court cannot apply the "manifest disregard of law" grounds as a basis for vacatur.

For the foregoing reasons, this Court concludes that the Bankruptcy Court did not err in finding that the City of Louisville was precluded from challenging the arbitrator's decision. Accordingly, it is

**ORDERED** that the Judgment entered April 1, 2004, by Chief Bankruptcy Judge Paul M. Glenn, be **AFFIRMED**. The Clerk of the Court is **DIRECTED** to enter judgement for the Appellee in accordance with this order and close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, on this 29th day of June, 2005.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record